IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

DIANE SMITH,

    Plaintiff,

v.        CIVIL ACTION NO.: CV507-054

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Donald B. Fishman ("ALJ" or "ALJ Fishman"), denying her claim for Supplemental Security Income ("SSI") disability benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff protectively filed an application for SSI on March 29, 2004, alleging disability beginning May 17, 1999, due to mental retardation. (Tr. at 20). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On July 25, 2006, ALJ Fishman held a video hearing. Plaintiff appeared and testified in Waycross, Georgia, and the ALJ presided over the hearing from Savannah, Georgia. James S. Waddington, a vocational expert, also appeared and testified at the

hearing. (Id.). The Appeals Council denied Plaintiff's request for review of the ALJ's denial of benefits and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 3-5).

Plaintiff, born on November 23, 1960, was forty-six (46) years old when ALJ Fishman issued his decision. (Tr. at 360). She has a limited education. (Id.). Her past relevant work includes employment as a counter supply worker. (Tr. at 369).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to

determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F. 3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of May 17, 1999, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 22). At step two, the ALJ determined that Plaintiff had borderline intellectual functioning and osteoarthritis of the knees. These conditions are considered "severe" under the Regulations. (Id.). However, the ALJ also determined, at step three, that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 23). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary, unskilled work. (Tr. at 24). At the fourth step, ALJ Fishman concluded that Plaintiff could not perform her past relevant work as a counter supply worker. (Tr. at 24). The ALJ further found that Plaintiff retained the ability to perform jobs that exist in significant numbers in the national economy. (Id.).

## ISSUE PRESENTED

Plaintiff asserts that no substantial evidence supports the ALJ's decision that Plaintiff was not disabled.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I. **ALJ Fishman's Decision That Plaintiff was not Disabled is Supported by Substantial Evidence.**

Plaintiff contends that the Commissioner's denial of disability benefits is not supported by substantial evidence. (Doc. No. 24, p. 3). Plaintiff further contends that she meets Listing 12.05(C) for mental retardation. (Id. at 3-6). Plaintiff asserts that the ALJ did not properly consider the impact of her mental limitations on her ability to perform work related functions on a regular and sustained basis. (Id. at 5).

Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 12.05(C) for mental retardation. Defendant further contends that, despite her impairments, Plaintiff had the RFC to perform sedentary, unskilled work. (Doc. No. 26, pp. 9-10). Defendant asserts that Plaintiff's RFC allows her to perform jobs that exist in significant numbers in the national economy and that Plaintiff is not disabled. (Id. at 9-10, 16).

Listing 12.05 defines the disability of mental retardation. Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning with evidence demonstrating or supporting the onset of the impairment prior to the age of 22. Listing 12.05(C) is the applicable standard for the case sub judice and defines claimants with mental retardation as having a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

ALJ Fishman found that Plaintiff has the severe impairments of borderline intellectual functioning and osteoarthritis of the knees. (Tr. at 22). The ALJ noted that Dr. Marc W. Eaton performed a psychological consultative evaluation of Plaintiff. The ALJ further noted that Dr. Eaton's examination revealed that Plaintiff attained a verbal IQ score of 65, performance IQ score of 67, and full scale IQ score of 63, which placed her functioning in the extremely low range of intelligence. ALJ Fishman observed that Plaintiff's skills in arithmetic and reading were consistent with intellectual ability in the borderline range. The ALJ remarked that Dr. Eaton opined that Plaintiff's results on the Wechsler adult intelligence scale, third edition ("WAIS-III") test provided a less than accurate indication of Plaintiff's customary level of intellectual functioning. (Tr. at 22). Dr. Eaton further opined that Plaintiff may possess the potential to perform at a higher intellectual level than she demonstrated at the evaluation. (Tr. at 296). Dr. Eaton observed that Plaintiff's scores on the computerized assessment of response-bias ("CARB") test indicated that she was exaggerating the extent and nature of her clinical symptoms. (Tr. at 296). Dr. Eaton opined that other test results obtained concurrently from Plaintiff should be considered of questionable validity. (Tr. at 296). Dr. Eaton remarked that Plaintiff appeared to give very poor effort to the word memory test ("WMT") and her results strongly suggested systematic response-bias. Dr. Eaton observed that Plaintiff's profile is frequently obtained by individuals who are attempting to simulate, exaggerate, or malinger cognitive deficits. Dr. Eaton averred that "it is very likely that litigation or other issues of primary or secondary gain are motivating factors in this individual's response-bias." (Tr. at 296). The ALJ noted that Dr. Eaton opined that Plaintiff's ability to follow work rules; relate to co-workers; use judgment; interact with

supervisors; behave in an emotionally stable manner; relate predictably in social situations; and understand, remember, and carry out simple job instructions was fair. Dr. Eaton further opined that Plaintiff's ability to deal with the public; deal with work stresses; function independently; demonstrate reliability; and understand, remember, and carry out detailed and complex job instructions was poor. (Tr. at 22). ALJ Fishman noted that Dr. Eaton diagnosed Plaintiff with anxiety disorder NOS, mild, psychotic disorder, NOS, and dissimulation, moderate. (Tr. at 22-23).

The ALJ remarked that Dr. Douglas P. Hein performed an orthopedic consultative examination on Plaintiff. ALJ Fishman noted that Dr. Hein opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. ALJ Fishman further noted that Dr. Hein opined that Plaintiff could stand and/or walk 4 hours total in an 8-hour workday. Dr. Hein observed that Plaintiff had no problems with sitting; could climb ramps and stairs occasionally; and should never climb ladders, ropes, or scaffolds. Dr. Hein remarked that Plaintiff could balance, stoop, crouch, kneel, and crawl occasionally. The ALJ observed that Plaintiff had no manipulative, visual, communicative, or environmental limitations. The ALJ further observed that Dr. Hein found Plaintiff to have some early degenerative disc changes, no neurological symptoms, and some evidence of arthritic changes in both knees. The ALJ noted that Dr. Hein found that, secondary to those findings, Plaintiff had standing and walking limitations, but would be capable of moderate activities. The ALJ remarked that the combined effect and combination of these impairments does not significantly limit Plaintiff's ability to perform basic work-related activities. (Tr. at 23).

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ALJ Fishman further found that Plaintiff does not meet listing 12.05(C). (Tr. at 23). The ALJ noted that Plaintiff had IQ scores below 70 on the consultative evaluation, but that there was evidence of malingering. The ALJ further noted that Plaintiff had a tested full scale IQ of 69 when she was 10 years old in 1970, but testing in 1978 indicated a verbal IQ score of 76, performance IQ score of 87, and full scale IQ score of 80. ALJ Fishman observed that Plaintiff's higher IQ scores in 1978 support Dr. Eaton's finding of malingering because it is doubtful that Plaintiff would lose 20 points on the performance scale without an intervening organic cause. The ALJ noted that there is no evidence of any organic injury to Plaintiff. The ALJ remarked that because there is malingering on the IQ testing, the rest of Plaintiff's allegations are also found to be suspect. (Tr. at 23). The ALJ further remarked that Plaintiff testified that she could not complete a work application because she can barely read and write, but yet she completed many of the forms in the E section. (Tr. at 24). The ALJ observed that Plaintiff testified at the hearing that she was fired from her job because she could not get to work on time. ALJ Fishman noted that Plaintiff spends most of her time at home watching television, cooks some, stated that she cannot stand on her feet for too long, repeated several classes before leaving school at the age of 18, could not pass the test to acquire her driver's license, and stated that she could only lift things that are light. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely

credible. The ALJ noted that he had considered and given appropriate weight to the opinions of the State Agency medical and psychological consultants and other program physicians and psychologists as non-examining sources. The ALJ further noted that the medical consultants found that Plaintiff could perform medium exertional level work. However, ALJ Fishman determined that Plaintiff retains the RFC to perform sedentary, unskilled work. (Tr. at 24).

The ALJ found Plaintiff to be unable to perform any past relevant work. However, the ALJ further found that considering Plaintiff's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. at 24). James Waddington, a vocational expert, testified at the hearing. (Tr. at 368-370). Waddington testified that there were jobs in the national economy that a hypothetical person matching Plaintiff's characteristics could perform. (Tr. at 370). Waddington averred that employment as a fast food worker, dry cleaner, and press operator would be available to the hypothetical person. (Tr. at 370). In light of the evidence before him, ALJ Fishman made the determination that Plaintiff has not been under a "disability" as defined in the Social Security Act, since the filing of her application on March 29, 2004. (Tr. at 24).

The record contains substantial evidence supporting the ALJ's decision that Plaintiff was not disabled. While Dr. Eaton's evaluation showed that Plaintiff attained a full scale IQ score of 63, Dr. Eaton emphasized that he thought Plaintiff was malingering and was capable of a higher level of intellectual functioning. The fact that Plaintiff attained a full scale IQ score of 80 in 1978 further supports this conclusion. The ALJ

applied the appropriate legal standards in coming to his determination. The evidence before the Court establishes that there was substantial evidence that Plaintiff was not disabled and that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 24th day of October, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE